**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| | : | |
| VINCENT T. LOWRY, as a Seller | : | |
| Representative and in his individual | : | |
| capacity, and JOSEPH N. GOMPERS, | : | |
| | : | No. 20-cv-02288 (VSB)(SLC) |
| Plaintiffs, | : | |
| | : | ECF CASE |
| v. | : | |
| | : | ORAL ARGUMENT REQUESTED |
| OPPENHEIMERFUNDS, INC., | : | |
| INVESCO, LTD., and MM ASSET | : | |
| MANAGEMENT HOLDING LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**DEFENDANT MM ASSET MANAGEMENT HOLDING LLC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

**DECHERT LLP**
David A. Kotler
Catherine V. Wigglesworth
Hayoung Park
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone:  (212) 698-3500

*Counsel for Defendant
MM Asset Management Holding LLC*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF RELEVANT FACTS ......................................................................... 2

      A.    Plaintiffs Enter Into The SPA With OFI .......................................... 2

      B.    MMAM Sells OFI And OAC To Invesco ......................................... 3

      C.    Plaintiffs' Claims In This Lawsuit .................................................. 4

ARGUMENT .................................................................................................................... 5

I.     PLAINTIFFS FAIL TO STATE A BREACH OF CONTRACT CLAIM
      AGAINST MMAM ............................................................................................ 5

      A.    Plaintiffs Cannot State A Direct Breach Of Contract Claim Against
            MMAM Based On A Contract To Which MMAM Is Not A Party ...................... 5

      B.    Plaintiffs Cannot Hold MMAM Derivatively Liable For OFI's Alleged
            Breach Of The SPA On The Basis Of A Conclusory "Alter Ego"
            Allegation ......................................................................................... 6

            1.    The Settled Pleading Standards For A Veil Piercing Claim .................... 7

            2.    Plaintiffs Do Not, And Cannot, Plead A Valid Veil Piercing Claim
                Against MMAM ............................................................................. 9

II.    PLAINTIFFS FAIL TO STATE A TORTIOUS INTERFERENCE WITH
      CONTRACT CLAIM AGAINST MMAM ...................................................... 11

      A.    Plaintiffs Do Not Plead Any Legally Cognizable Act Of Tortious
            Interference By MMAM ..................................................................... 12

      B.    MMAM's Action In Selling OFI And OAC To Invesco Was Justified As
            A Matter Of Law ............................................................................... 14

      C.    MMAM Did Not Cause Any Alleged Breach Of The SPA Or Any Of
            Plaintiffs' Alleged Damages ............................................................. 17

CONCLUSION ................................................................................................................ 18

# TABLE OF AUTHORITIES

**CASES**

*American Lecithin Co. v. Rebmann*,
2017 WL 4402535 (S.D.N.Y. Sept. 30, 2017)......................................................5, 7

*Brause v. First Nat'l Real Estate Tr.*,
267 N.Y.S.2d 876 (1st Dep't 1966), *aff'd*, 26 N.Y.2d 737 (1970) .........................13

*Browning v. Data Access Sys., Inc.*,
2012 WL 2054722 (E.D. Pa. June 6, 2012) .............................................................13

*Burns v. Stratos*,
2017 WL 6402997 (E.D. Pa. Sept. 25, 2017) ..........................................................17

*Canfield v. Statoil USA Onshore Properties Inc.*,
2017 WL 1078184 (M.D. Pa. Mar. 22, 2017)............................................13, 15, 16

*CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*,
357 F.3d 375 (3d Cir. 2004)....................................................................................14

*Doberstein v. G-P Indus., Inc.*,
2015 WL 6606484 (Del. Ch. Oct. 30, 2015) ..........................................................7, 8

*Don King Prods., Inc. v. Smith*,
47 F. App'x 12 (2d Cir. 2002) ................................................................................11

*East Rockhill Twp. v. Richard E. Pierson Materials Corp.*,
386 F. Supp. 3d 493 (E.D. Pa. 2019) ........................................................12, 15, 16

*EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*,
2008 WL 4057745 (Del. Ch. Sept. 2, 2008) ..........................................................8, 10

*eCommerce Indus., Inc. v. MWA Intelligence, Inc.*,
2013 WL 5621678 (Del. Ch. Sept. 30, 2013) ........................................................8, 10

*Garber v. Legg Mason, Inc.*,
347 F. App'x 665 (2d Cir. 2009) ..............................................................................2

*GE Capital Mortg. Servs., Inc. v. Pinnacle Mortg. Inv. Corp.*,
897 F. Supp. 854 (E.D. Pa. 1995) ..........................................................................15

*Germain v. Wisniewski*,
2016 WL 4158994 (W.D. Pa. Aug. 5, 2016) ..........................................................14

*Gilmour v. Bohmueller*,
2005 WL 241181 (E.D. Pa. Jan. 27, 2005) ........................................................11, 12

*Glaberman Assocs., Inc. v. J. Kinderman & Sons*,
    1999 WL 98588 (E.D. Pa. Feb. 25, 1999) ...........................................................................12

*Glenn v. Point Park Coll.*,
    272 A.2d 895 (Pa. 1971) ....................................................................................................14

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
    50 N.Y.2d 183 (1980) .........................................................................................................15

*Holland v. JPMorgan Chase Bank, N.A.*,
    2019 WL 4054834 (S.D.N.Y. Aug. 28, 2019).......................................................................2

*Hotel Aquarius B.V. v. PRT Corp.*,
    1992 WL 391264 (S.D.N.Y. Dec. 22, 1992) .........................................................................6

*In re Vinogradova*,
    270 B.R. 159 (Bankr. S.D.N.Y. 2001) ................................................................................11

*Inter Impex S.A.E. v. Comtrade Corp.*,
    2004 WL 2793213 (S.D.N.Y. Dec. 6, 2004) .........................................................................6

*J.M. Builders & Assocs., Inc. v. Lindner*,
    889 N.Y.S.2d 60 (2d Dep't 2009)..................................................................................12, 14

*LaCourte v. JP Morgan Chase & Co.*,
    2013 WL 4830935 (S.D.N.Y. Sept. 4, 2013)........................................................................7

*Lankau v. Luxoft Holding, Inc.*,
    266 F. Supp. 3d 666, 683 (S.D.N.Y. 2017)........................................................................17

*Lincoln Place LLC v. RVP Consulting, Inc.*,
    791 N.Y.S.2d 31 (1st Dep't 2005) ......................................................................................13

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
    8 F.3d 130 (2d Cir. 1993)......................................................................................................7

*Masefield AG v. Colonial Oil Indus.*,
    2006 WL 346178 (S.D.N.Y. Feb. 15, 2006)........................................................................16

*Mason v. Network of Wilmington, Inc.*,
    2005 WL 1653954 (Del. Ch. Jul. 1, 2005)............................................................................8

*MasterCard Int'l Inc. v. Nike, Inc.*,
    164 F. Supp. 3d 592, 605 (S.D.N.Y. 2016)........................................................................11

*Mazzei v. Money Store*,
    308 F.R.D. 92 (S.D.N.Y. 2015), *aff'd*, 829 F.3d 260 (2d Cir. 2016).........................................6

*Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical, France*,
    2004 WL 5366102 (Del. Ch. Mar. 4, 2004)................................................................9, 10

*MicroStrategy Inc. v. Acacia Research Corp.*,
    2010 WL 5550455 (Del. Ch. Dec. 30, 2010)............................................................7, 8, 9, 10

*P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*,
    198 F. Supp. 2d 466 (S.D.N.Y. 2002).........................................................................15

*Patrick v. Allen*,
    355 F. Supp. 2d 704 (S.D.N.Y. 2005)...........................................................................3

*PK Rest., LLC v. Lifshutz*,
    30 N.Y.S.3d 13 (1st Dep't 2016) ...............................................................................13

*Shea v. Hambro Am. Inc.*,
    606 N.Y.S.2d 198 (1st Dep't 1994) ............................................................................14

*Simply Snackin, Inc. v. S-L Distribs.*,
    2017 WL 6039734 (M.D. Pa. Dec. 6, 2017) .................................................................16

*Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*,
    579 N.Y.S.2d 353 (1st Dep't 1992) ............................................................................13

*Wenske v. Blue Bell Creameries, Inc.*,
    2018 WL 5994971 (Del. Ch. Nov. 13, 2018) .................................................................7, 10

*Williams v. Barber*,
    770 N.Y.S.2d 477 (3d Dep't 2004)...............................................................................16

*Zamias v. Fifth Third Bank*,
    2018 WL 3448160 (W.D. Pa. July 17, 2018) ................................................................14

**OTHER AUTHORITIES**

https://www.massmutual.com/about-us/news-and-press-releases/press-
    releases/2016/07/05/07/02/massmutual-completes-acquisition-of-the-metlife-
    premier-client-group ................................................................................................3

Invesco Ltd., Current Report (Form 8K) (Oct. 18, 2018), available at
    https://www.sec.gov/Archives/edgar/data/914208/000091420818000403/ivzpr
    essrelease3q2018.htm ...............................................................................................4

## PRELIMINARY STATEMENT

Defendant MM Asset Management Holding LLC ("MMAM"), an indirect wholly-owned subsidiary of the Massachusetts Mutual Life Insurance Company, is a duly-organized holding company that from 2012 until May 2019 owned substantially all of another duly-organized holding company (Oppenheimer Acquisition Corp., or "OAC"); OAC in turn, since 1990, has owned substantially all of Defendant OppenheimerFunds, Inc. ("OFI"), an SEC-registered investment adviser entrusted to manage several hundred billions of investor dollars.

This lawsuit concerns the alleged breach of a Sale and Purchase Agreement ("SPA") between Plaintiffs and OFI.  According to the Complaint, the alleged acts of breach were committed by OFI and/or Defendant Invesco, Ltd. ("Invesco"), which acquired OAC and OFI from MMAM in May 2019.  Critically, MMAM is **not** alleged (i) to be a party to the SPA, (ii) to itself have breached the SPA, or (iii) to have had even a single interaction with Plaintiffs regarding any of the events that give rise to any alleged breach of the SPA.  Nor is there even a scintilla of plausible allegation in the Complaint (nor could there be) that MMAM, OAC, and OFI are sham "alter ego" corporations, let alone that each of these long-existing and functioning corporations was improperly formed years before the Plaintiffs and OFI entered into the SPA in 2015 as part of some omniscient scheme to visit a fraud upon these Plaintiffs years later.

Nevertheless, Plaintiffs' Complaint asserts two alternative claims against MMAM—for breach of the SPA, and for tortious interference with the SPA.  Neither claim is cognizable as a matter of settled law.  Plaintiffs' breach of contract claim against MMAM, which rests entirely on Plaintiffs' conclusory suggestion that MMAM and OFI are "*alter ego[s]*," (Compl. ¶ 226; emphasis in original) is fundamentally and fatally deficient.  Plaintiffs must plead a plausible basis for the Court to take the extraordinary action of piercing not just one but two corporate veils (OFI to OAC, OAC to MMAM), which requires well-pled allegations that (i) MMAM,

through its alleged alter egos, has created two sham entities designed to defraud investors and creditors, and (ii) both OAC's and OFI's corporate form was abused to commit an alleged fraud on Plaintiffs independent of the underlying breach of contract.  Plaintiffs' Complaint contains no well-pled allegations as to either of these required elements, which renders their veil piercing claim a legal non-starter.

Plaintiffs' tortious interference with contract claim against MMAM fares no better.  The sole allegedly tortious act by MMAM is its decision to sell OFI and OAC to Invesco.  Under no circumstances recognized by any court can this transaction—a valid and enforceable business merger between independent parties acting in their own economic interests—constitute tortious interference with the SPA.  Nor do Plaintiffs plead any plausible basis to find that MMAM entered into the Invesco transaction with the intent to harm Plaintiffs, that MMAM's conduct in selling OFI and OAC was anything but legitimate and justified, or that MMAM caused any of Plaintiffs' alleged harm, even though they must provide well-pled allegations for each of these elements to state a cognizable tortious interference claim.

MMAM's motion to dismiss for failure to state a claim should be granted, and Plaintiffs' Complaint as against MMAM should be dismissed in its entirety and with prejudice.

## **STATEMENT OF RELEVANT FACTS**[1]

### A.    **Plaintiffs Enter Into The SPA With OFI**

VTL Associates, LLC ("VTL"), an entity owned and controlled by Plaintiffs (*id.* ¶¶ 21-22), created certain investment products that were organized and sold as "Exchange Traded

---

[1] The allegations in the Complaint referenced herein are accepted as true solely for purposes of the present motion.  In addition, the Court can take judicial notice on a motion to dismiss of documents incorporated into the complaint by reference as well as certain matters of public record including SEC filings, newspaper articles, and information publicly announced on a party's website.  *See Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009); *Holland v. JPMorgan Chase Bank, N.A.*, 2019 WL 4054834, at *3 (S.D.N.Y. Aug. 28, 2019).  The Court

Funds" or ETFs. *Id.* ¶¶ 34-66. In September 2015, Plaintiffs sold VTL to OFI by entering into the SPA with OFI and certain other parties (including Plaintiff Lowry himself). *Id.* ¶¶ 77-78 & Ex. A. Pursuant to the SPA, OFI paid VTL $50 million at closing. *Id.* ¶ 79. The parties also agreed that Plaintiffs could receive up to $35 million in additional "Earn Out Payments" that were contingent on the achievement of certain conditions specified in the SPA, though the SPA also specified that Plaintiffs would not receive any Earn-Out Payments unless those conditions were achieved. *Id.* ¶¶ 79, 82-94. Plaintiffs already have received or expect to receive the $50 million at closing and approximately $25 million in Earn-Out Payments notwithstanding any alleged breaches of the SPA; their lawsuit seeks recovery of the approximately $10 million in additional Earn-Out Payments that Plaintiffs claim they expected to receive. *Id.* ¶¶ 20, 81.

The only counterparty to Plaintiffs in the SPA is OFI; MMAM is not a party to the SPA, nor do Plaintiffs allege that MMAM played any role in its negotiation or implementation. *Id.* ¶¶ 21, 22, 77, 78.

### B.   MMAM Sells OFI And OAC To Invesco

MassMutual is a mutual life insurance company that was founded in 1851 and currently serves more than five million customers worldwide. Compl. ¶ 23; *see* https://www.massmutual.com/about-us/news-and-press-releases/press-releases/2016/07/05/07/02/massmutual-completes-acquisition-of-the-metlife-premier-client-group. MMAM, a Delaware limited liability company that is an indirect wholly-owned subsidiary of MassMutual, is a holding company that owns all or substantially all of a number of asset management entities within the MassMutual corporate family. Compl. ¶ 25. MMAM

---

may also consider "documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Patrick v. Allen*, 355 F. Supp. 2d 704, 709 (S.D.N.Y. 2005) (brackets in original).

owned substantially all of OAC prior to OAC's acquisition by Invesco in May 2019.  *Id.*  OAC

in turn owned substantially all of OFI, which is a registered investment adviser that managed

nearly $230 billion in assets as of February 2019.  *Id.* ¶¶ 23, 25.

In September 2018, Invesco announced that it had reached an agreement to acquire OAC

and OFI from MMAM for approximately $5.7 billion.  *Id.* ¶ 112; Invesco Ltd., Current Report

(Form 8-K) (Oct. 18, 2018), available at

https://www.sec.gov/Archives/edgar/data/914208/000091420818000403/ivzpressrelease3q2018.

htm.  The transaction with Invesco closed in May 2019.  Compl. ¶ 144.  MMAM ceased to have

any corporate ownership over OAC or OFI following the transaction.  *See id.* ¶¶ 222, 233.

Plaintiffs allege that between the time of the September 2018 announcement of the

Invesco transaction and the May 2019 closing of that transaction, they communicated with OFI

and Invesco regarding their view of their rights under the SPA.  *Id.* ¶¶ 130-34, 155(a), 155(d).

Plaintiffs do not allege that they communicated with MMAM during this time period regarding

this or any other subject.

### C.   Plaintiffs' Claims In This Lawsuit

Plaintiffs allege that in the time since the announcement of the Invesco transaction in

September 2018, OFI and/or Invesco breached the SPA in two principal ways.  Specifically,

Plaintiffs allege that OFI and/or Invesco (a) breached the SPA's non-assignment clause by virtue

of the Invesco transaction, and (b) breached Section 10.2 of the SPA, which concerns action

taken "for the purpose of reducing or eliminating" the amount of Plaintiffs' "Earn-Out

Payments," by virtue of business decisions following the Invesco transaction.  *Id.* ¶¶ 171-172.

MMAM is not alleged to have taken any action with respect to VTL's (or Invesco's) ETF

products at all, much less in breach of the SPA.  Rather, as concerns Plaintiffs and the SPA, the

sole alleged wrongful acts by MMAM are (i) MMAM's sale of OFI and OAC to Invesco, or

alternatively (ii) MMAM acting as OFI's "*alter ego*" as of the time of the sale of OFI and OAC to Invesco.  *Id.* ¶¶ 225-226, 236-243.

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *American Lecithin Co. v. Rebmann*, 2017 WL 4402535, at *12 (S.D.N.Y. Sept. 30, 2017) (Broderick, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (dismissing veil-piercing, breach of contract and tortious interference claims).  "This standard demands 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Rather, a complaint must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.* (quoting *Iqbal*, 556 U.S. at 678). While a complaint's well-pled allegations contained are taken to be true for purposes of the motion, "this tenet is 'inapplicable to legal conclusions.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Under this settled standard, neither of Plaintiffs' counts against MMAM states a claim upon which relief can be granted.

**I.    PLAINTIFFS FAIL TO STATE A BREACH OF CONTRACT CLAIM AGAINST MMAM**

**A.    Plaintiffs Cannot State A Direct Breach Of Contract Claim Against MMAM Based On A Contract To Which MMAM Is <u>Not</u> A Party**

As Plaintiffs implicitly concede, MMAM, a non-party to the SPA, cannot be directly liable for OFI's alleged breach of that contract.[2]  For good reason: it is well established that, as a general matter, "if an entity is not a party to a contract, no valid breach of contract claim exists

---

[2] MMAM joins in the arguments by Invesco and OFI that Plaintiffs have failed to plead a breach of any provision of the SPA.  *See* Mem. Of Law In Support Of Motion To Dismiss On Behalf Of OppenheimerFunds, Inc. And Invesco, Ltd., Point I.

against that entity." *Hotel Aquarius B.V. v. PRT Corp.*, 1992 WL 391264, at *6 (S.D.N.Y. Dec. 22, 1992) (dismissing breach of contract claim against non-party to the contract). *See Inter Impex S.A.E. v. Comtrade Corp.*, 2004 WL 2793213, at *4 (S.D.N.Y. Dec. 6, 2004) ("Without a contractual relationship, there can be no alleged breach.").[3]  The only exception to this rule is where the non-party to the contract has affirmatively signified an intent to be bound to the contract, either by assuming the contract or by having been assigned the contract. *Mazzei v. Money Store*, 308 F.R.D. 92, 109 (S.D.N.Y. 2015) ("It is hornbook law that a nonsignatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract.") (internal quotation/citation omitted), *aff'd*, 829 F.3d 260 (2d Cir. 2016).  Plaintiffs have not alleged (and under no circumstances can they genuinely allege) that MMAM manifested any intent to be bound by the SPA, either by assuming the contract or having been assigned OFI's obligations.

Accordingly, the only possible theory supporting Plaintiffs' breach of contract claim against MMAM is that MMAM can be held derivatively liable for an alleged breach by OFI.  As set forth in the next section, Plaintiffs have not—and cannot—state such a claim either.

### B.   Plaintiffs Cannot Hold MMAM Derivatively Liable For OFI's Alleged Breach Of The SPA On The Basis Of A Conclusory "Alter Ego" Allegation

Plaintiffs here seek to hold MMAM, a non-party to the SPA, derivatively liable for an alleged breach of that agreement by its former indirect subsidiary, OFI, on the sole basis that MMAM was allegedly OFI's "*alter ego*" at some unspecified time.  Compl. ¶ 226.  Under no reading of the settled standards for pleading and proving the extraordinary relief of piercing a corporate veil can Plaintiffs hold MMAM liable—let alone reach the result here that Plaintiffs

---

[3] The SPA contains a New York choice of law provision.  Compl. Ex. A at ¶ 15.2.

seek of piercing <u>two</u> different corporate veils (OFI and OAC) to hold MMAM liable for OFI's alleged breach of the SPA.[4]

### 1.     The Settled Pleading Standards For A Veil Piercing Claim

"Delaware public policy does <u>not</u> lightly disregard the separate legal existence of corporations. . . ." *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010) (emphasis added).  Accordingly, to state a veil piercing claim, "a plaintiff must do more than plead that one corporation is the alter ego of another in conclusory fashion in order for the Court to disregard their separate legal existence." *Id.* (holding veil piercing claim inadequately pled where the complaint "merely [pled] that the two corporations took actions that allegedly constitute breaches of contract and fraud without asserting any facts suggesting that such wrongs arose out of a 'misuse of the corporate structure'").  *See Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *6 (Del. Ch. Nov. 13, 2018) (holding that "conclusory allegations that the parent's management exclusively dominated and controlled the subsidiary's management" are insufficient to state a veil piercing claim).  Instead, Plaintiffs "must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015) (internal quotation/citation omitted).

---

[4] Under New York law, the state with the greatest interest in the dispute governs veil piercing claims, which typically is the law of the company's state of incorporation.  *E.g.*, *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132-33 (2d Cir. 1993); *American Lecithin*, 2017 WL 4402535, at *13.  MMAM is a Delaware limited liability company (Compl. ¶ 25) and OAC is a Delaware corporation (Invesco Ltd. Form 8-K/A (June 27, 2019), Ex. 99.1), and therefore Delaware law should govern Plaintiffs' veil piercing allegations.  Even if New York law were to be applied, the result would be the same because "New York and Delaware veil-piercing law do not materially differ." *LaCourte v. JP Morgan Chase & Co.*, 2013 WL 4830935, at *6 n.2 (S.D.N.Y. Sept. 4, 2013).

A court applying Delaware law is instructed to "disregard the corporate form only in the exceptional case." *eCommerce Indus., Inc. v. MWA Intelligence, Inc.*, 2013 WL 5621678, at *27 (Del. Ch. Sept. 30, 2013) (internal quotation/citation omitted).  In determining whether the corporate form should be disregarded, a court may consider the following factors: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *MicroStrategy*, 2010 WL 5550455, at *11 (internal citation/quotation omitted).

Furthermore, Plaintiffs must plead that the corporate form was misused to commit a fraud on creditors.  *See Doberstein*, 2015 WL 6606484, at *5 (dismissing veil piercing claim because plaintiff failed to plead that defendant "utilized [the corporation] as a sham entity to defraud her"); *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *13 (Del. Ch. Sept. 2, 2008) (rejecting veil piercing "[i]n the absence of fraud and inequity"); *Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954, at *4 (Del. Ch. Jul. 1, 2005) (refusing to pierce corporate veil where facts alleged by plaintiff did not constitute "a sham that exist[s] for no other purpose than as a vehicle for fraud") (internal quotation/citation omitted).

Finally, Plaintiffs also must plead that the corporate form was abused to commit an alleged fraud independent of the underlying breach of contract.  *Doberstein*, 2015 WL 6606484, at *4-5 (dismissing veil piercing claim that lacked well-pled allegations as to the nexus between the alleged wrongful conduct and manipulation of the corporate form).  Most directly, mere "[a]llegations of breach of contract by a subsidiary do <u>not</u> suffice to supply the necessary fraud or injustice to hold the subsidiary to be the alter ego of the parent, especially where there is <u>no</u>

evidence of wrong-doing by the parent." *Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical, France*, 2004 WL 5366102, at *4 (Del. Ch. Mar. 4, 2004) (emphasis added).

### 2. Plaintiffs Do Not, And Cannot, Plead A Valid Veil Piercing Claim Against MMAM

As Plaintiffs correctly admit, OFI and MMAM were separated by not one, but two different layers of corporate entities; MMAM owned substantially all of OAC, which in turn owned substantially all of OFI. *See* Compl. ¶¶ 218, 220-222. Therefore, Plaintiffs must pierce two separate corporate veils in order to hold MMAM liable for OFI's alleged breach of the SPA. Plaintiffs do not (and cannot) plead any plausible basis to support the piercing of either OFI's or OAC's corporate veils, let alone both.

Indeed, Plaintiffs' Complaint contains no allegation that could support any veil piercing claim as to either OAC or OFI. Plaintiffs do not, and cannot, allege that OFI, a well-recognized and long-existing SEC-registered investment adviser that managed approximately $230 billion in assets as of the time of Invesco transaction, was undercapitalized or insolvent. Nor do (or can) Plaintiffs allege any other indicia of "*alter ego*" corporations, such as that any of OAC's or OFI's corporate formalities were ignored, that MMAM siphoned OFI's or OAC's funds, or that OAC or OFI was a mere façade for MMAM. *See MicroStrategy*, 2010 WL 5550455, at *12 (dismissing veil piercing claim where complaint "merely pleads" that the parent and subsidiary "took actions that allegedly constitute breaches of contract and fraud without asserting any facts suggesting that such wrongs arose out of a misuse of the corporate structure") (internal citation/quotation omitted). Dismissal of Plaintiffs' ill-founded veil piercing claim is warranted on this basis alone.

To be sure, the Complaint conclusorily alleges that MMAM "exercised complete dominion over OFI" with respect to OFI's obligations to Plaintiffs under the SPA. Compl. ¶

226.  But the only allegations pled in the Complaint in support of MMAM's alleged dominion over OFI are that: (1) MMAM was the holding company for OAC; (2) OAC was the holding company for OFI; and (3) MMAM was the ultimate parent company of OFI.  *Id.* ¶¶ 220-222. These allegations provide no support for a cognizable veil piercing claim, as the law is clear that "[a] parent corporation is not liable for the acts of its subsidiary merely because it owns (and votes) a majority of the subsidiary's stock or shares common shareholders, directors or officers with the subsidiary."  *Wenske*, 2018 WL 5994971, at *6 (dismissing veil piercing claim).  *Accord eCommerce Indus.*, 2013 WL 5621678, at *27 ("Mere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity.").

Moreover, even if Plaintiffs had alleged (or could in good faith allege) some basis to find that MMAM was OFI's "alter ego," their Complaint contains no plausible allegation that MMAM engaged in some abuse of the corporate form designed to harm Plaintiffs (or anyone for that matter).  Plaintiffs aver only that "MMAM used that domination to commit a wrong upon Plaintiffs."  Compl. ¶ 226.  In so pleading, Plaintiffs appear to claim that the alleged breach of the SPA constitutes a fraud or injustice on Plaintiffs (*id.* ¶¶ 236-40), but the law is clear that "[a]llegations of breach of contract by a subsidiary do <u>not</u> suffice to supply the necessary fraud or injustice to hold the subsidiary to be the alter ego of the parent, especially where there is no evidence of wrong-doing by the parent."  *Medi-Tec*, 2004 WL 5366102, at *4 (emphasis added). *Accord MicroStrategy*, 2010 WL 5550455, at *12 (declining to pierce the corporate veil where plaintiff "merely pl[ed] that the two corporations took actions that allegedly constitute breaches of contract and fraud without asserting any facts suggesting that such wrongs arose out of a 'misuse of the corporate structure'"); *EBG Holdings*, 2008 WL 4057745, at *12 n.107 (recognizing that "[t]he underlying cause of action [for breach of contract] does not supply the

necessary fraud or injustice.  To hold otherwise would render the fraud or injustice element

meaningless, and would sanction bootstrapping.") (internal quotation/citation omitted).

In sum, Plaintiffs fail on every level to plead an actionable basis to pierce the corporate

veils between MMAM, OAC, and OFI.  Their breach of contract claim against MMAM therefore

should be dismissed.[5]

## II.   PLAINTIFFS FAIL TO STATE A TORTIOUS INTERFERENCE WITH CONTRACT CLAIM AGAINST MMAM

The elements of Plaintiffs' alternative claim against MMAM, for tortious interference

with contractual relations, are: "(1) the existence of a contractual . . . relation between the

complainant and the third party; (2) purposeful action on the part of the defendant, specifically

intended to harm the existing relation . . . ; (3) the absence of privilege or justification on the part

of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's

conduct."[6]  *Gilmour v. Bohmueller*, 2005 WL 241181, at *13 (E.D. Pa. Jan. 27, 2005) (internal

citation/quotation omitted).[7]  Dismissal of a tortious interference claim is appropriate where, as

---

[5] Finally, even if Plaintiffs had pled some basis for the Court to pierce both OAC's and OFI's corporate veils (which they manifestly have not), MMAM cannot be held liable for any alleged breach of the SPA that took place after OFI merged with Invesco on May 24, 2019.  *See* Compl. ¶¶ 145, 155, 162, 164.  After that date, there was no corporate relationship between MMAM and OAC or OFI, and thus no basis to impute OFI's conduct to MMAM.  *See In re Vinogradova*, 270 B.R. 159, 173 (Bankr. S.D.N.Y. 2001) (holding that former owner of a business cannot be held liable for breach of contract where alleged breach occurred after sale of business).

[6] New York also requires a showing that the defendant was aware of the contract.  *Don King Prods., Inc. v. Smith*, 47 F. App'x 12, 15 (2d Cir. 2002).

[7] Under New York choice of law rules, which uses an "interest analysis" in tort cases, the law of the jurisdiction "with the most significant interest in, or relationship to, the dispute" applies.  *MasterCard Int'l Inc. v. Nike, Inc.*, 164 F. Supp. 3d 592, 605 (S.D.N.Y. 2016) (internal quotation/citation omitted).  Here, that analysis would most likely result in application of Pennsylvania or New York law to Plaintiffs' tortious interference claim.  The locus of the tort is "the place where the alleged injury is inflicted," and Plaintiff Lowry and VTL Associates were located in Pennsylvania (Compl. ¶ 21; Compl. Ex. A at Ex. B), while New York law governs the construction of the SPA (*see* Compl. Ex. A at ¶ 15.2).  Pennsylvania and New York law are in accord with respect to the deficiencies in Plaintiffs' tortious interference claim against MMAM.

here, the Complaint fails to plead all of these elements adequately.  *E.g.*, *East Rockhill Twp. v. Richard E. Pierson Materials Corp.*, 386 F. Supp. 3d 493, 503 (E.D. Pa. 2019) (dismissing tortious interference with contractual relations claim for failure to sufficiently plead absence of justification); *Gilmour*, 2005 WL 241181, at *13 (dismissing tortious interference claim where plaintiff "alleges no facts which would support an inference that any specific third party was prevented from performing its contractual obligations owed to Plaintiffs as a result of Defendants' conduct"); *J.M. Builders & Assocs., Inc. v. Lindner*, 889 N.Y.S.2d 60, 63 (2d Dep't 2009) (dismissing tortious interference claim for failure to adequately plead that a valid contract existed, that defendants' actions were motivated solely by malice, or that defendants intentionally procured the breach of contract without justification).

### A.    Plaintiffs Do Not Plead Any Legally Cognizable Act Of Tortious Interference By MMAM

For their tortious interference claim against MMAM, Plaintiffs conclusorily allege that MMAM tortiously interfered with the SPA by entering into the Invesco-OFI Merger Agreement and thereby induced or caused OFI to breach the SPA.  Compl. ¶¶ 236-242.  In support of this theory, Plaintiffs allege that MMAM induced OFI to breach the SPA by assigning or delegating its contractual duties to Invesco.  *Id.* ¶ 237.  Plaintiffs also aver that MMAM knowingly allowed OAC to make false representations and warranties to Invesco.  *Id.* ¶¶ 239-240.  Plaintiffs do not allege any facts establishing (or even suggesting) that MMAM acted for the purpose of causing a breach of the SPA.  Nor do Plaintiffs allege how MMAM "induced" OFI to assign or delegate its

---

*See Glaberman Assocs., Inc. v. J. Kinderman & Sons*, 1999 WL 98588, at *2 (E.D. Pa. Feb. 25, 1999) ("[T]here is no conflict between New York and Pennsylvania law with regard to any of plaintiff's claims" including tortious interference with business relationships.).  We therefore provide applicable citations to both states' jurisprudence.

duties, how OFI actually did assign or delegate those duties, or how, even if any false representations or warranties were made to Invesco, such statements actually harmed Plaintiffs.

The courts have consistently held that threadbare allegations like those in this Complaint do not state a claim for tortious interference. *Canfield v. Statoil USA Onshore Properties Inc.*, 2017 WL 1078184, at *27-28 (M.D. Pa. Mar. 22, 2017) (dismissing tortious interference claim where assertion that defendant "deliberately and without justification" caused breach of contract was "a mere legal conclusion without any well-pleaded, factual allegations" as to "what constituted the wrongful conduct"); *Browning v. Data Access Sys., Inc.*, 2012 WL 2054722, at *11 (E.D. Pa. June 6, 2012) (dismissing tortious interference claims for failure to plead "some affirmative facts not mere conclusory or speculative allegations that Defendants intended to interfere with Plaintiffs' contracts or business expectancy"); *PK Rest., LLC v. Lifshutz*, 30 N.Y.S.3d 13, 18 (1st Dep't 2016) (dismissing tortious interference claim where complaint "allege[d] only in conclusory fashion" that defendants intended to induce a breach of contract); *Lincoln Place LLC v. RVP Consulting, Inc.*, 791 N.Y.S.2d 31, 33 (1st Dep't 2005) (dismissing tortious interference claim, which was "essentially, bare legal conclusions" and alleged wrongful means by plaintiff only "in the most conclusory of terms").

Even giving Plaintiffs' Complaint a charitable reading, the only "purposeful action" by MMAM that they allege is MMAM's entry into the Invesco-OFI Merger Agreement.  Compl. ¶¶ 236, 238-240.  But Plaintiffs do not (and cannot) plead any facts to establish that MMAM's entering into this transaction was "malicious or carried out with the intent to harm" Plaintiffs' relationship with OFI.  *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 579 N.Y.S.2d 353, 354 (1st Dep't 1992) (dismissing claim for tortious interference with contract).  *E.g.*, *Brause v. First Nat'l Real Estate Tr.*, 267 N.Y.S.2d 876, 877 (1st Dep't 1966) (dismissing tortious

interference claim because "there is no allegation that [defendants] acted improperly or with the intent solely to injur[e] the plaintiffs without any expectation of economic advantage"), *aff'd*, 26 N.Y.2d 737 (1970); *Germain v. Wisniewski*, 2016 WL 4158994, at *8 (W.D. Pa. Aug. 5, 2016) (dismissing claim for tortious interference with contract because plaintiff failed to allege that defendant's purposeful action "was done with the intent to harm Plaintiff").  Because Plaintiffs do not, and cannot, plead that MMAM "acted "[f]or the purpose of causing harm to the plaintiff," they cannot state a claim for tortious interference against MMAM.  *Glenn v. Point Park Coll.*, 272 A.2d 895, 899 (Pa. 1971) (affirming dismissal of tortious interference claim); *J.M. Builders & Assocs.*, 889 N.Y.S.2d at 63 (dismissing tortious interference claim because "[t]he complaint failed to adequately plead that the defendants' actions were motivated solely by malice . . . and that the defendant intentionally procured the third party's breach of that contract without justification") (internal quotation/citation omitted).[8]

## B.    MMAM's Action In Selling OFI And OAC To Invesco Was Justified As A Matter Of Law

Plaintiffs' tortious interference claim also fails for the independent reason that MMAM's conduct was legally justified.  Under Pennsylvania and New York law, lack of privilege or justification is an essential element of a tortious interference claim.  *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 385 (3d Cir. 2004) ("[I]n order to make out a claim of tortious interference with contractual relations, a plaintiff must show 'the absence of privilege or justification on the part of the defendant.'"); *Shea v. Hambro Am. Inc.*, 606 N.Y.S.2d 198, 200

---

[8] As set forth above, MMAM also joins in the arguments by OFI and Invesco that neither of them breached the SPA.  In the absence of a breach of the SPA, there also can be no claim against MMAM for tortious interference in causing an alleged breach of the SPA.  *See Zamias v. Fifth Third Bank*, 2018 WL 3448160, at *8 (W.D. Pa. July 17, 2018) (dismissing claim for tortious interference with contractual relations because plaintiffs failed to allege a plausible claim for breach of contract).

(1st Dep't 1994) ("Recovery for tortious interference is not permitted absent a showing that those defendants intended to harm plaintiff [] without economic or other lawful excuse or justification"). Thus, Plaintiffs must show "not only that [MMAM] acted intentionally to harm [Plaintiffs], but also that those actions were improper." *East Rockhill*, 386 F. Supp. 3d at 503 (dismissing claim for tortious interference with contractual relations for failure to allege improper actions on part of defendant). *See P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 198 F. Supp. 2d 466, 472 (S.D.N.Y. 2002) (dismissing claim for tortious interference with contract for failure to allege "intentional interference without justification").

Courts applying Pennsylvania or New York law look to the factors listed in Restatement (Second) of Torts section 767 to determine whether a defendant's actions were improper, including: "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties." *East Rockhill*, 386 F. Supp. 3d at 503; *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 189 (1980). The nature of the alleged conduct is considered to be "a chief factor in determining whether the conduct is improper or not." *GE Capital Mortg. Servs., Inc. v. Pinnacle Mortg. Inv. Corp.*, 897 F. Supp. 854, 869 (E.D. Pa. 1995) (internal quotation/citation omitted). *Accord Guard-Life Corp.*, 50 N.Y.2d at 190 ("[T]he nature of the conduct of the person who interferes" is "a chief factor in determining whether conduct is improper"). Importantly, conduct is <u>not</u> improper where it has been "sanctioned by the rules of the game which society has adopted." *Canfield*, 2017 WL 1078184,

at *28.  *See Williams v. Barber*, 770 N.Y.S.2d 477, 479 (3d Dep't 2004) (dismissing tortious

interference claim where plaintiff failed to show that any interference was improper).

Plaintiffs do not and cannot allege that by entering into the Invesco-OFI Merger

Agreement, MMAM was acting for the purpose of causing a breach of the SPA, as opposed to

acting in its own economic interests by divesting its subsidiary to a third-party purchaser.  The

only allegedly improper motive that Plaintiff identifies is the consideration received by MMAM

and OFI as a result of OFI's merger with Invesco.  Compl. ¶ 236 (MMAM allegedly induced

OFI to breach the SPA "for the consideration received by its wholly-owned subsidiary, OFI, as

well as the consideration MMAM received in the merger with Invesco").  Yet the motive to

receive consideration from a business sale transaction is <u>not</u> an improper motive and therefore

<u>cannot</u> be wrongful or improper for purposes of a tortious interference claim, as "a simple profit

motive would be proper for all corporate entities."  *Canfield*, 2017 WL 1078184, at *28.  *See*

*Simply Snackin, Inc. v. S-L Distribs.*, 2017 WL 6039734, at *6 (M.D. Pa. Dec. 6, 2017)

(dismissing tortious interference claim; "[W]here an actor is motivated by a genuine desire to

protect legitimate business interests, this factor weighs heavily against finding an improper

interference.") (internal quotation/citation omitted); *Masefield AG v. Colonial Oil Indus.*, 2006

WL 346178, at *7 (S.D.N.Y. Feb. 15, 2006) ("[C]ourts in this jurisdiction have continued to

recognize the defense of economic self-interest in an action for tortious interference with

contract.").  MMAM's entry into a separate business transaction in support of its own interests,

which Plaintiffs do not (and cannot) allege had anything to do with the SPA, cannot support their

tortious interference claim against MMAM.

### C.   MMAM Did Not Cause Any Alleged Breach Of The SPA Or Any Of Plaintiffs' Alleged Damages

Plaintiffs' allegation that MMAM's conduct was the cause of the alleged breach of the SPA and consequently the alleged damages suffered by Plaintiffs also falls far short of stating a claim.  While Plaintiffs allege that the SPA was breached and Plaintiffs were harmed due to OFI's purported assignment and delegation of its obligations under the SPA to Invesco and various business decisions allegedly affecting Plaintiffs' Earn-Out Payments (*see* Compl. ¶¶ 236-237), they fail to allege how MMAM was involved in any of these actions.  Similarly, Plaintiffs fail to provide any factual support that could establish that MMAM knowingly allowed OAC to make any allegedly false representation or warranty with respect to the Invesco-OFI Merger Agreement that allegedly caused damage to Plaintiffs.  *See id*. ¶¶ 239-240.  Without any allegations of how MMAM's alleged improper conduct (entering into the Invesco-OFI Merger agreement) caused OFI to breach the SPA, causation is not well-pled and dismissal is warranted.  *See Burns v. Stratos*, 2017 WL 6402997, at *1 n.2 (E.D. Pa. Sept. 25, 2017) (holding that amendment of complaint would be futile where claim for tortious interference with contract would fail because the only tortious conduct alleged did not cause interference with contract); *Lankau v. Luxoft Holding, Inc*., 266 F. Supp. 3d 666, 683 (S.D.N.Y. 2017) (dismissing tortious interference claim where plaintiff failed to allege that defendant was  "'but for' cause of the allege[d] contractual breaches").

Finally, Plaintiffs fail to adequately plead how MMAM's alleged interference with the SPA (assuming it actually occurred) caused damages to Plaintiffs.  Plaintiffs claim that they were damaged when the "RevenueShares ETFs" formerly operated by Plaintiffs did not perform or sell as well as Plaintiffs allegedly expected, and Plaintiffs therefore received lower Earn-Out Payments than they allegedly anticipated.  Compl. ¶¶ 137-39, 155, 158-167.  But even if

MMAM had somehow tortiously interfered with the SPA by virtue of the Invesco transaction, that transaction itself is not alleged to have caused (and logically could not have caused) Plaintiffs' lower-than-anticipated Earn-Out Payments.

## **CONCLUSION**

For the foregoing reasons, MMAM respectfully requests that Plaintiffs' claims against MMAM be dismissed in their entirety and with prejudice.

Dated:  May 27, 2020                                    DECHERT LLP

/s/ David A. Kotler
David A. Kotler
Catherine V. Wigglesworth
Hayoung Park
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone:  (212) 698-3500

*Counsel for Defendant*
*MM Asset Management Holding LLC*